[No. 24258. Department One. November 4, 1932.]

R. D. INMAN et al., Appellants, v. OLAF SANDVIG et al., Respondents.[1]

*LaBerge, Cheney & Hutcheson,* for appellants Inman.

*Richards, Gilbert & Conklin,* for appellant Yakima Fruit Growers Association.

*Grady & Velikanje* and *Stanley P. Velikanje,* for appellant Yakima County Horticultural Union.

*The Attorney General, E. W. Anderson, Assistant,* and *Olaf Sandvig,* for respondents.

PARKER, J.—The plaintiff, Inman, having an established apple growing business in Yakima county, commenced this action in the superior court for that county, seeking injunctive relief against the defendant Sandvig, as prosecuting attorney of that county, and other officers charged with the enforcement of our

[1]Reported in 15 P. (2d) 696.

horticultural statutory provisions and the rules and regulations lawfully adopted and promulgated in pursuance thereof. The Yakima County Horticultural Union and the Yakima Fruit Growers' Association, each being cooperative marketing associations having a large established business in Yakima county, by intervention, became parties to the action, joining with the plaintiff, Inman, seeking the same relief against the defendants.

A trial of the cause upon the merits in the superior court resulted in a judgment denying to the plaintiff and interveners relief as prayed for by them, from which they have jointly appealed to this court.

As we view the arguments of counsel and the right of this controversy, our problem is, in substance, this: Is the rule assumed to be adopted and promulgated by the director of agriculture, providing that No. 3 grade apples "shall not be wrapped nor packed nor lidded in a standard apple box of the state of Washington," a valid, enforcible rule, subjecting one so packing apples for market to the penalties prescribed by the statute? We pass over several questions argued by counsel, directly to the question of the validity of this rule in the light of the due process of law and equal privileges and immunities guaranties of our state constitution.

Chapter 42, Laws of 1903, p. 49 (Rem. Comp. Stat., § 11626), provided that

"The standard size of an apple box shall be eighteen inches long, eleven and one half inches wide, ten and one-half inches deep, inside measurement."

Thus, there was first established by statutory enactment a standard size apple box in this state. This was in harmony with a custom which then, and for a long time prior thereto had, prevailed throughout the fruit growing and fruit marketing districts of this

state, and to a considerable extent elsewhere in the United States. This has remained the law up to the present time, it being reenacted in § 22, chapter 194, Laws of 1927, p. 278 (Rem. 1927 Sup., § 11603-22), our general weights and measures law.

Since 1903, this dimension apple box has, by law or custom, become a recognized measure for the marketing of apples generally in the United States, and to a considerable extent in foreign markets. To offer for sale, or contract for sale of, apples at so much per box, has become as definite and certain in meaning as to offer for sale, or contract for sale of, wheat or corn at so much per bushel.

In chapter 27, Laws of 1931, p. 88, amendatory to chapter 166, Laws of 1915, p. 514, § 16, our general law relating to horticulture, we read:

"Section 16. It shall be unlawful for any person growing or packing and selling, offering for sale or shipping in boxes or packages, any fruit, vegetables or horticultural products grown in this state, or expose for sale, sell or offer for sale in the State of Washington, any fruit, vegetables or horticultural products without plainly marking on the outside of the box, package or parcel, with such standards, rules and regulations as have been or may be adopted and required by the director of agriculture after public hearings as provided by law, and it shall be unlawful for any person having in his possession for sale or offering for sale or selling any fruit or horticultural products grown in this state and shipped in boxes or packages; to repack the same in the boxes or packages of any other grower or shipper or from any other place or to sell or offer for sale in closed packages, or to pack in or offer for sale in marked box or package any fruit or horticultural products other than that originally contained or shipped therein unless the markings are changed to conform to the contents of the package as heretofore provided.

"In addition to the marks required to be placed upon any closed box or package of fruit, vegetable or

horticultural products grown in this state, as hereinabove provided, the grower thereof or association or organization of growers packing the same shall mark upon the outside of such package the grade of the fruit, vegetable or horticultural products contained therein, specifying the grades and markings according to the obligatory grading rules and regulations, issued, published, and adopted by the director of agriculture, or a special or private grade or brand duly registered and approved by the director of agriculture as provided by law, and it shall be unlawful for any person to re-mark any such closed package to a higher or superior grade than that originally marked by the grower thereof or association or organization packing the same, or for any person other than the grower or association or organization packing such fruit grown in this state to place upon any such closed package not marked with the grade of the contents thereof any mark or brand indicating the grade of such contents:

. . .

"Section 17. It shall be unlawful for any grower thereof or association or organization of growers packing apples, or other fruits, vegetables or nursery stock, to mark the package with the grade of the contents, or for any person to ship, sell, barter, or otherwise dispose of or offer for sale, or have in his possession for the purpose of sale, any package of apples, or other fruits, vegetables, or nursery stock, grown and packed within the State of Washington unless such contents shall comply with the general obligatory rules and regulations made, adopted and published from time to time by the director of agriculture, which general obligatory rules and regulations shall define and establish the standard for the grades."

Prior to August, 1932, the rules adopted and promulgated by the director of agriculture established standards for grades of apples in part as follows:

"Extra Fancy or First Grade, shall consist of apples of one variety which are mature, hand picked, clean, well formed, sound, free from bruises, limbrubs, sprayburn, sunburn, russeting, drouth spot, hail mark,

visible watercore, broken skin, apple scab, stings, and from diseases and insect injury, except that slight blemishes shall be permitted in this grade.

"FANCY OR SECOND GRADE shall consist of apples of one variety which are mature, hand picked, clean, fairly well formed, sound, free from visible watercore, broken skin, and from damage caused by bruises, limbrub, sprayburn, sunburn, russeting, drouth spot, hail marks, apple scab, disease and insect injury.

"C GRADE OR THIRD GRADE shall consist of apples of one variety which are mature, hand picked, clean, not badly misshapen, sound, free from soft bruises, broken skin, and from serious damage caused by sunburn, growth cracks, visible watercore, disease and insect injury."

These grades were in harmony with grades recognized by custom and by our general act of 1915, and amendments thereto, relating to horticulture. On August 1, 1932, the director of agriculture adopted and promulgated a new set of rules defining the first grade and the second grade as theretofore defined by the rules above quoted, but referring to the third grade without further specifically defining that grade as follows:

"WASHINGTON No. 3 GRADE. Apples which do not meet all the requirements of the Extra Fancy, Fancy or Hail Grade, and are free from infection or infestation, shall not be wrapped nor packed nor lidded in a standard apple box of the State of Washington.

"ORCHARD RUN. When Extra Fancy, Fancy and Washington No. 3 grade apples are placed loose in unlidded Washington standard apple boxes, they may be marked 'Orchard Run;' . . ."

Some other special grades were established by the old, as well as by the new, rules, but with these we are not concerned.

It is plain from the evidence that the third grade apples, as defined by the rules prior to August, 1932, are free from fault detrimental to public health, in

their consumption as food. The same may be said as to third grade apples, as referred to by the rules adopted August 1, 1932. Indeed, the very language of both the former and the latter rather plainly so indicates.

It has been the custom for many years, in the marketing of apples grown in this state, to pack them for market in standard apple boxes in the manner sought to be prohibited by the rule of August 1, 1932, referring to third grade apples. That manner of packing is conducive to the convenient and efficient handling of the apples and in their transportation. That manner of packing is also conducive to the preservation of the apples so they will reach the consumer in the best possible condition. That manner of packing has also been well recognized in the apple packing and marketing business as having marketable advantages much superior to the old-fashioned method of handling apples in a loose and exposed condition prior to their reaching the consumer. This applies as well to third grade apples as to the first and second grade apples.

The evidence plainly indicates that a very large quantity of the apples grown in this state each year are of the third grade, as defined by the old rule and as referred to in the new rule. It is manifest that the third grade apples, as referred to in the new rule, if enforced, will be deprived of the advantageous packing privileges accorded to the first and second grade apples.

We do not understand it to be seriously contended that there is any necessity for the rule based upon considerations of public health. Indeed, we see no tenable ground for any such contention. It is argued, however, that the new rule may be justified upon the ground that it will prevent misrepresentation to the purchaser of the kind and quality of apples, other

than first and second grade apples, which may be so packed for market in standard apple boxes.

This argument, it seems to us, could be as well advanced in justification of such a rule against so packing first and second grade apples. Manifestly, there are ample means of making known the quality and kind of third grade apples so packed, as there are ample means for making known the quality and kind of first and second grade apples so packed; this, by appropriate marking on the outside of the box, as prescribed by the statute, and supplemented, as may be necessary, by reasonable rules.

We are of the opinion that the rule adopted and promulgated by the director of agriculture on August 1, 1932, with reference to third grade apples, in so far as that rule provides that third grade apples "shall not be wrapped nor packed nor lidded in a standard apple box of the state of Washington," is unreasonably discriminatory as against third grade apples in favor of first and second grade apples, and in violation of Art. I, § 3, of our state constitution, providing that "no person shall be deprived of life, liberty, or property without due process of law," and Art. I, § 12, of our state constitution, providing that

"No law shall be passed granting to any citizen, class of citizens, or corporation, other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations."

The word "law," as used in this section, manifestly includes a rule made by any administrative authority, as well as a law made by direct legislative authority. Our conclusion seems to us so plainly correct as to render it unnecessary to call for any extended review or citation of the many court decisions and texts supporting it. The controlling principles are well stated in general terms in the text of 6 R. C. L. 196 as follows:

"The constitutional guaranty that no person shall be deprived of his property without due process of law may be violated without the physical taking of property for public or private use. Its capability for enjoyment and adaptability to some use are essential characteristics and attributes without which property cannot be conceived. Hence a law is considered as being a deprivation of property within the meaning of this constitutional guaranty if it deprives an owner of one of its essential attributes, or destroys its value, or restricts or interrupts its common, necessary or profitable use, or hampers the owner in the application of it to the purposes of trade, or imposes conditions upon the right to hold or use it, and thereby seriously impairs its value. These general principles apply not only to statutes enacted by the legislature but to the action of executive officers generally."

Our conclusion, therefore, is that appellants are entitled to injunctive relief restraining the respondents from enforcing the rule adopted and promulgated by the director of agriculture on August 1, 1932, in so far as that rule provides that third grade apples "shall not be wrapped nor packed nor lidded in a standard apple box of the state of Washington."

The judgment of the superior court is reversed, and the cause remanded to that court with directions to award to appellants injunctive relief against respondents accordingly.

TOLMAN, C. J., MITCHELL, HOLCOMB, and MILLARD, JJ., concur.